**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **JA'VEL COLEMAN** | **CIVIL ACTION NO. 5:24-CV-00512** |
| **VERSUS** | **JUDGE HICKS** |
| **TARA NATIONAL INC., ET AL** | **MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S DAUBERT MOTION TO EXCLUDE AND/OR LIMIT EXPERT TESTIMONY OF JOSH LORENCZ**

**MAY IT PLEASE THE COURT:**

Defendants designated Josh Lorencz, a Principal Consultant – Digital Forensics at Rimkus Consulting Group, as an expert to analyze AT&T Call Detail Records (CDRs) for mobile line (772) 882-1219, the number attributed to Defendant Marckson Saint Fleur. Mr. Lorencz prepared a report dated January 27, 2026, in which he identifies seven call and text transactions on that phone number between approximately 12:50 a.m. and 5:28 a.m. on May 10, 2023—the morning of the collision at issue. He reviewed only two documents: the Louisiana Uniform Crash Report and the AT&T records. He reviewed no deposition transcripts, no GPS data, no electronic logging device (ELD) data, and no photographs or video from the scene. (Exhibit B at p. 24, lines 11–16; p. 27, lines 9–12; p. 28, lines 4–6.)

Plaintiff seeks to exclude or limit Mr. Lorencz's testimony because his opinions fail to satisfy the reliability requirements of Federal Rule of Evidence 702. He concedes that the methodology he has applied in similar cases; specifically, independent cross-verification of tower location data, was available to him here, but he chose not to use it. He further cannot describe the internal processes by which his primary analytical tool, CellHawk, produces its outputs. In the alternative, even if the Court declines to exclude him, Mr. Lorencz's testimony must be strictly limited to what he disclosed in his report and to the factual observations he is actually qualified to

make, excluding any inference about vehicle location or movement, duration of parking, user identity, driver behavior, or causation - all of which he expressly disclaimed.

**LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. The trial court serves as a gatekeeper to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-94 (1993).

The party offering expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability analysis under Daubert is flexible and focuses on principles and methodology, not the conclusions they generate. Daubert, 509 U.S. at 595. The district court must ensure that an expert employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Factors that may be considered in evaluating reliability include: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Daubert*, 509 U.S. at 593–94. Additionally, courts examine whether there is simply too great an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## LAW AND ARGUMENT

### I. Mr. Lorencz Failed to Reliably Apply His Own Methodology to the Facts of This Case

Mr. Lorencz's testimony should be excluded because he did not apply his stated methodology to the facts of this case with the intellectual rigor required by Rule 702(d) and Kumho Tire. He acknowledged under oath that in prior cases he has independently verified cell tower locations by manually cross-checking GPS coordinates in Google Earth and confirming the azimuth of the antenna sector. He performed none of those verifications here.

When asked whether he independently verified the tower locations in this case, Mr. Lorencz confirmed:

> *Q: But in this particular case, you did not do any confirmations on using the GL description at all yourself? You trusted the software; right?*
>
> *A: Correct. I did not use a secondary tool to validate those locations. (Exhibit B at p. 19, lines 22–25; p. 20, lines 1–2.)*

His sole explanation for foregoing this verification was that the CellHawk tool "has been used by me hundreds of times and dates. Not had a problem." (Exhibit B at p. 18, lines 15–18.) That is precisely the kind of *ipse dixit* reasoning that *Daubert* and its progeny prohibit. A bare assertion that a process has worked before is not a substitute for actually applying the process. *See Gen. Elec. Co. v. Joiner*, 522 U.S. at 146 (noting that courts need not admit opinion evidence "connected to existing data only by the *ipse dixit* of the expert").

The significance of this omission is not theoretical. The cell tower at issue, eNodeB 183361, is located approximately 1.3 miles from the stated collision site. (Exhibit B at p. 14, lines 9–12.) Its serviceable sector spans an azimuth of 240 degrees, covering a broad geographic arc that includes active roadway as well as the shoulder. Without independent cross-verification, there is no assurance that the tower location data extracted from the AT&T records corresponds to the

geographic position depicted in Lorencz's figures. Mr. Lorencz conceded he did not go to the crash site, did not visit the tower location, and did nothing in this case to validate the outputs he is now offering to a jury as reliable. (Exhibit B at p. 15, lines 7–10.)

A meaningful gap between what an expert's methodology requires and what he actually did is grounds for exclusion under Rule 702. Because Mr. Lorencz acknowledges that independent cross-verification is a step his methodology encompasses and because he omitted it entirely in this case, his opinions should be excluded.

## II. Mr. Lorencz Cannot Explain the Methodology of the Software That Generated His Opinions

Mr. Lorencz's opinions should also be excluded because the primary tool through which he generated them, CellHawk, operated by LeadsOnline, functions as a black box whose internal methodology he is unable to explain, test, or validate. His only training on the software occurred approximately a decade ago, and he has attended no refresher courses since.

On the question of his CellHawk training, Mr. Lorencz testified:

*Q: When did you receive that training?*

*A: I would have to estimate it was approximately 2016.*

...

*Q: Have you attended any refresher courses or follow-ups?*

*A: I have not. (Exhibit B at p. 16, lines 1–10.)*

More significantly, Mr. Lorencz cannot describe the mechanism by which the software processes the raw CDR data and produces the visual mapping outputs on which his opinions depend:

*Q: Do you know how that ingestion occurs?*

*A: The back-end functionality of how it goes and interprets it is not something that they provide end users. (Exhibit B at p. 17, lines 16–19.)*

*Daubert* requires that an expert's methodology be capable of being tested and subjected to peer review. 509 U.S. at 593–94. An expert who feeds records into a software program, receives a visual output, and cannot describe the process that connects input to output cannot satisfy those requirements. The figures attached to Mr. Lorencz's report are the product of a computational process he cannot explain. Asking the jury to rely on those figures is asking the jury to accept conclusions generated by a mechanism that even the expert himself cannot illuminate or verify.

Mr. Lorencz's educational background compounds this concern. He holds a bachelor's degree in finance with an option in real estate. (Exhibit B at p. 29, lines 3–4.) He has no degree in computer science, telecommunications, engineering, or forensic science. (Exhibit B at p. 29, lines 9–18.) His relevant qualifications are certification-based and experience-based. Where an expert's opinions rest on a software tool whose underlying methodology he cannot explain, his experience and certifications cannot fill the analytical gap that Daubert requires be closed.

## III. In the Alternative, Mr. Lorencz's Testimony Must Be Strictly Limited to the Factual Observations in His January 27, 2026 Report

Even if the Court declines to exclude Mr. Lorencz in his entirety, his testimony must be limited to the four corners of the factual observations set forth in his January 27, 2026 Report of Findings. Mr. Lorencz confirmed under oath that this report is his complete and total expression of his opinions in this case and that he has not supplemented it. (Exhibit B at p. 8, lines 21–25; p. 9, lines 1–3.) Any attempt by defense counsel to elicit opinions at trial beyond those four corners would be impermissible under Federal Rule of Civil Procedure 26(a)(2)(B).

More importantly, the specific limitations Mr. Lorencz acknowledged at deposition must be enforced. He expressly disclaimed the ability to offer any of the following opinions, each of which the defense may be expected to urge the jury to infer from his testimony:

**Vehicle Location and Movement:** Mr. Lorencz testified that "it's impossible to find the true location, as in GPS, down to a certain location" and that he could "only rely on the tower and sector of the tower." (Exhibit B at p. 13, lines 18–23.) He further admitted that vehicle location data during the transactions was simply "not afforded" to him. (Exhibit B at p. 47, lines 2–6.) He may not testify, and defense counsel may not argue through his testimony, that the cell tower data establishes that the truck was stopped, moving, or at any particular geographic location during any transaction.

**Duration of Vehicle Presence at Crash Site:** The earliest transaction near the crash site occurred at 5:22:37 a.m., less than three minutes before the 5:25 a.m. collision. The cell tower and sector used for those transactions cover a broad geographic area extending well beyond the shoulder. Mr. Lorencz reviewed no GPS data, ELD data, or other source that could speak to when the truck arrived at the shoulder or how long it had been there. He may not testify, and the cell data may not be used to argue, that the truck had been parked for any specific period of time before the crash.

**User Identity and Conduct:** Mr. Lorencz offered no opinion as to who was physically holding or using the phone during any transaction. (Exhibit B at p. 20, lines 5–8.) He further testified it "is improper to assert knowledge of who's physically holding a device when it's being used when you're not present." (Exhibit B at p. 23, lines 17–24.) He offered no opinion as to whether incoming communications were seen or responded to, whether any call was hands-free or handheld, or what any user was doing during any transaction. (Exhibit B at p. 21, lines 1–17.)

**Driver Behavior, Distraction, and Causation:** Mr. Lorencz offered no opinion as to whether phone use affected the driver's judgment or decisions, whether the driver was operating a vehicle during any phone activity, or whether any phone use played any role in causing the

collision. (Exhibit B at p. 21, lines 18–24; p. 22, lines 4–13; p. 24, lines 1–6.) He expressly agreed that those matters are "outside the purview" of his role. (Exhibit B at p. 46, line 23 – p. 47, lines 1–2.) Defendants may not elicit or imply such opinions from him at trial.

The practical purpose of this alternative relief is to ensure that Mr. Lorencz's testimony, if admitted, goes no further than identifying which cell tower handled which transaction and at what time. Defendants retained him to analyze a phone record; they did not ask him to review GPS data, ELD data, depositions, photographs, or any of the other sources that would have been necessary to support the inferences they intend for the jury to draw. Having constrained his analysis, they should not be permitted to offer his limited findings as a vehicle for unlimited inference.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court exclude the testimony of Josh Lorencz in its entirety. In the alternative, Plaintiff requests that the Court enter an order limiting his testimony to exclude: (1) any opinion that the cell tower data establishes the location, movement, or stationary status of any vehicle; (2) any opinion that the cell tower data establishes the duration of any vehicle's presence on the roadway shoulder; (3) any opinion as to the identity of the person using the phone or that person's physical location or conduct during any transaction; (4) any opinion as to driver behavior, distraction, decision-making, or causation of the collision; and (5) any opinion not contained within the four corners of his January 27, 2026 Report of Findings.

Respectfully submitted:

**DUDLEY DEBOSIER, APLC**

***/s/G. Adam Savoie***

**BRIAN D. LANDRY, #21688**
**G. ADAM SAVOIE, #36628**
4300 Youree Drive, Suite 250
Shreveport, Louisiana 71105
Telephone: (318) 670-7365
Facsimile: (318) 831-1598
Blandry@dudleydebosier.com
Asavoie@dudleydebosier.com
*Counsel for Plaintiff, Ja'Vel Coleman*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon all counsel of record has been sent to all counsel of record by the electronic filing system used by this Court upon the filing made, this 21st day of May, 2026.

*/s. G. Adam Savoie*
**G. ADAM SAVOIE**