**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JA'VEL COLEMAN                                    CIVIL ACTION NO. 24-0512

VERSUS                                           JUDGE S. MAURICE HICKS, JR.

BURLINGTON INSURANCE                             MAGISTRATE JUDGE HORNSBY
CO, ET AL.

**MEMORANDUM RULING**

Before the Court is Plaintiff Ja'Vel Coleman's ("Coleman") <u>Daubert</u> Motion to Exclude and/or Limit the Expert Testimony of Josh Lorencz ("Lorencz"). <u>See</u> Record Document 101. Defendants Tara National, Inc., Marckson Saint Fleur ("Saint Fleur"), and Navigators Insurance Company (collectively, "Defendants") oppose the Motion. <u>See</u> Record Document 119. Coleman replied. <u>See</u> Record Document 122. For the reasons set forth below, the Motion is **GRANTED IN PART and DENIED IN PART.**

**FACTUAL BACKGROUND**

This litigation arises from a motor vehicle accident that occurred during the early morning hours of May 10, 2023, on Interstate 20 in Bienville Parish, Louisiana. <u>See</u> Record Document 16 at 1. Coleman alleges that she sustained injuries when her vehicle struck the rear of a tractor-trailer operated by Saint Fleur. <u>See id.</u> at 3.

According to Defendants, Saint Fleur experienced mechanical issues with his tractor-trailer and pulled onto the shoulder of Interstate 20 prior to the collision. <u>See</u> Record Document 119 at 1–2. During discovery, Defendants retained Lorencz, a digital forensics consultant employed by Rimkus Consulting Group, to analyze AT&T Call Detail Records associated with Saint Fleur's telephone number. <u>See</u> Record Document 101-3. Lorencz prepared a Report of Findings dated January 27, 2026. <u>See id.</u> According to the

report, Lorencz reviewed AT&T Call Detail Records and identified calls and text messages associated with the phone number, the times of those communications, and the cell towers used during those communications. See id.

Coleman now seeks to exclude, or alternatively limit, Lorencz's testimony under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Coleman argues that Lorencz's methodology is unreliable because: (1) he failed to independently verify cell tower locations; (2) he relied upon CellHawk software but cannot explain the internal processes of that technology; and (3) his training on CellHawk occurred in 2016 and has not been refreshed since that time. See Record Document 101.

## LAW AND ANALYSIS

### I.    Applicable Standards

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703 and the standards articulated in Daubert. See 509 U.S. 579. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. According to the Daubert Court, Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." 509 U.S. at 597; see Fed. R. Evid. 702.

Rule 703 provides that "[a]n expert may base an opinion on facts or data … that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Additionally, Rule 703 states that those facts or data need not be admissible for the opinion of the expert to be admissible. See id. However, when the underlying facts or data are inadmissible, they may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Id.

Daubert provided an illustrative list of factors for courts to use when evaluating an expert's reliability. See Jackson v. N. Caddo Hosp. Serv. Dist., 2024 WL 697587, at *2 (W.D.La., 2024) (citing Daubert, 509 U.S. at 592–94). The factors include "whether [the expert's opinion] has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community." Daubert, 509 U.S. at 580. The Daubert Court added, that "[t]he inquiry is a flexible one …." Id. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002).

The Fifth Circuit has emphasized that expert testimony must be grounded in "the methods and procedures of science" rather than "subjective belief or unsupported speculation." Moore v. Ashland Chem., Inc., 151 F.3d 269, 275 (5th Cir. 1998). The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. See id. at 276. However, the proponent need not prove that the expert's opinion is correct, but only that it is reliable. See id.

Ultimately, the Court must determine whether the expert is qualified, whether the methodology is reliable, and whether the testimony will assist the trier of fact. If these

3

conditions are not met, exclusion is warranted, but "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000).

## II.    Analysis

### a.  Qualifications

The Court first addresses whether Lorencz is qualified to offer expert testimony concerning cell site location analysis. The record reflects that Lorencz possesses substantial training and experience in the field of cell phone forensics. See Record Document 101-3. According to Lorencz's curriculum vitae, he spent approximately seventeen years with the Simi Valley Police Department working as a detective and police officer and then subsequently worked in digital forensics for Envista Forensics before joining Rimkus. See id. The record further reflects that Lorencz has several certifications in digital forensics and has performed numerous digital analyses of this kind. See id.

Under Rule 702, an expert may be qualified through "knowledge, skill, experience, training, or education." Based upon Lorencz's education, training, and professional experience, the Court finds that he possesses sufficient qualifications to testify regarding cell site location analysis. Accordingly, the Court finds that Lorencz is qualified to offer expert testimony in this matter.

### b.  Reliability of Methodology

Having determined that Lorencz is qualified, the Court must next determine whether the methodology underlying his opinions is sufficiently reliable under Rule 702 and Daubert. Coleman argues that Lorencz's opinions should be excluded because his CellHawk training occurred in 2016, he has not attended refresher courses since that time, and he cannot explain the software's internal processes. See Record Document

4

101-1 at 4-5. However, the Court finds that these criticisms do not warrant exclusion under Rule 702.

As an initial matter, courts have repeatedly recognized cell site location analysis as a reliable methodology under Rule 702. See United States v. Schaffer, 439 F. App'x 344, 347 (5th Cir. 2011) (unpublished) (recognizing that cell site location analysis is "neither untested nor unestablished"); see also United States v. Porter, No. CR 13-66, 2016 WL 538456, at *3 (E.D. La. Feb. 10, 2016). Notably, Coleman does not challenge the general reliability of cell site location analysis itself.

Instead, Coleman argues that Lorencz lacks sufficient familiarity with the CellHawk software because he has not received recent training and cannot explain the software's internal processes. See Record Document 101-1 at 4-5. However, Rule 702 does not require an expert to possess exhaustive knowledge regarding every aspect of a software program utilized in his field. The relevant inquiry is whether the expert possesses sufficient knowledge to reliably apply the methodology at issue. See Fed. R. Evid. 702.

Here, the record reflects that Lorencz has extensive experience utilizing CellHawk and performing cell site location analyses. See Record Document 101-4 at 18. The fact that he cannot explain the software's back-end functionality does not render his methodology unreliable. Experts routinely rely upon specialized software tools without possessing detailed knowledge of the software's source code or internal algorithms. Any alleged deficiencies in Lorencz's familiarity with CellHawk's internal workings can be scrutinized on cross-examination and affect the weight of his testimony rather than its admissibility. See Daubert, 509 U.S. at 596. Accordingly, the Court rejects Coleman's

argument that Lorencz's opinions should be excluded based upon his training history or inability to explain CellHawk's internal processes.

Coleman also argues that Lorencz failed to reliably apply his methodology because he did not independently verify cell tower locations. See Record Document 101-1 at 3-4. During his deposition, Lorencz acknowledged that he has independently verified tower locations in prior matters but did not do so in this case. See Record Document 101-4 at 17-19. Instead, he relied upon the AT&T records and CellHawk's mapping functions. See id. The Court finds that this criticism goes to the weight of Lorencz's testimony rather than its admissibility.

Although Lorencz acknowledged that independent verification through tools like Google Earth may be used to ensure accuracy of the cell tower locations, Coleman has identified no authority finding that such verification is a prerequisite to admissibility under Rule 702. Likewise, the Court is aware of no authority suggesting that an expert's failure to employ every available validation technique renders an otherwise reliable methodology inadmissible. The Court concludes that Lorencz's decision not to independently verify the tower locations presents an issue appropriately explored through cross-examination. Accordingly, the Court declines to exclude Lorencz's testimony on this basis.

c. Scope of Permissible Testimony

Although the Court has found that Lorencz is qualified and that his methodology is sufficiently reliable, the Court agrees with Coleman that limitations on the scope of Lorencz's testimony are appropriate. Rule 702 requires not only that expert testimony be reliable, but also that it assist the trier of fact. See Fed. R. Evid. 702(a). Thus, even where

an expert is qualified and employs a reliable methodology, the testimony must remain within the bounds of what that methodology can reasonably support.

Lorencz was retained to analyze AT&T Call Detail Records associated with a particular telephone number. See Record Document 101-3. His report identifies calls and text messages, the timing of those communications, and the cell towers associated with those communications. See id. The record further reflects that Lorencz reviewed the AT&T Call Detail Records and the Louisiana Uniform Crash Report but did not review GPS data, electronic logging device ("ELD") data, or other location-specific information. See Record Documents 101-1 at 6 & 101-3 at 1.

Lorencz testified that cell site location analysis does not permit him to determine the precise GPS location of a device. See Record Document 101-4 at 13. Rather, he can only identify the tower and sector utilized during a communication. See id. Thus, the fact that a communication utilized a specific tower only indicates that the device was within the serviceable range of that tower at that time; it does not establish the device's precise location.

Accordingly, Lorencz may testify regarding the contents of the AT&T Call Detail Records, the timing of the calls and text messages reflected therein, the cell towers and sectors associated with those communications, and the general principles underlying cell site location analysis. Such testimony may assist the jury in understanding the evidence.

However, the Court finds that the methodology employed by Lorencz does not support testimony concerning the precise location of any vehicle or person, the precise time that Saint Fleur arrived at the accident location, the length of time that any vehicle remained at a particular location, or other conclusions that cannot be reliably derived from

7

the Call Detail Records. Likewise, Lorencz may not offer opinions regarding user identity, driver behavior, distraction, causation, or matters beyond the scope of his report and expertise.

<b>CONCLUSION</b>

Based on the reasons explained above, Coleman's <u>Daubert</u> Motion (Record Document 101) is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** to the extent that Lorencz's testimony shall be limited as set forth herein. The Motion is **DENIED** in all other respects.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of July, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT