**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JA'VEL COLEMAN                                    CIVIL ACTION NO. 24-0512

VERSUS                                           JUDGE S. MAURICE HICKS, JR.

BURLINGTON INSURANCE                             MAGISTRATE JUDGE HORNSBY
CO, ET AL.

**MEMORANDUM RULING**

Before the Court is Plaintiff Ja'Vel Coleman's ("Coleman") <u>Daubert</u> Motion to Exclude and/or Limit Expert Testimony of Dr. Douglas Brown ("Dr. Brown") (Record Document 104). Defendants Tara National, Inc. ("Tara National"), Marckson Saint Fleur ("Saint Fleur"), and Navigators Insurance Company ("Navigators") (collectively, "Defendants") oppose the Motion. <u>See</u> Record Document 118. Coleman replied. <u>See</u> Record Document 121. For the reasons set forth below, the Motion is **GRANTED IN PART and DENIED IN PART.**

**FACTUAL BACKGROUND**

This litigation arises from a motor vehicle accident that occurred during the early morning hours of May 10, 2023, on Interstate 20 in Bienville Parish, Louisiana. <u>See</u> Record Document 16 at 1. Coleman alleges that she sustained injuries when her vehicle struck the rear of a tractor-trailer operated by Saint Fleur. <u>See id.</u> at 3.

During discovery, Defendants retained Dr. Brown, an orthopedic surgeon and certified independent medical examiner, to perform an independent medical examination of Coleman and provide expert opinions regarding her injuries, future medical treatment, functional limitations, and ability to return to work. <u>See</u> Record Document 104-3. Dr.

Brown examined Coleman on January 15, 2026, and subsequently issued an expert report setting forth his findings and opinions. See id.

Coleman now seeks to exclude Dr. Brown's testimony under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Coleman argues that Dr. Brown's testimony should be excluded because: (1) his opinions regarding future medical costs lack a reliable foundation; (2) his opinions concerning Coleman's neurological condition are unreliable because he allegedly failed to adequately account for an October 2023 EMG report; (3) he lacks the qualifications necessary to offer opinions regarding future medical costs; and (4) his opinions regarding future surgical treatment and Coleman's ability to return to work are unreliable because he no longer actively performs orthopedic surgery and allegedly deferred to the opinions of Coleman's treating physicians. See Record Document 104.

## LAW AND ANALYSIS

### I.    Applicable Standards

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703 and the standards articulated in Daubert. See 509 U.S. 579. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. According to the Daubert Court, Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is

2

relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." 509 U.S. at 597; see Fed. R. Evid. 702.

Rule 703 provides that "[a]n expert may base an opinion on facts or data … that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Additionally, Rule 703 states that those facts or data need not be admissible for the opinion of the expert to be admissible. See id. However, when the underlying facts or data are inadmissible, they may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Id.

Daubert provided an illustrative list of factors for courts to use when evaluating an expert's reliability. See Jackson v. N. Caddo Hosp. Serv. Dist., 2024 WL 697587, at *2 (W.D.La., 2024) (citing Daubert, 509 U.S. at 592–94). The factors include "whether [the expert's opinion] has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community." Daubert, 509 U.S. at 580. The Daubert Court added, that "[t]he inquiry is a flexible one …." Id. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002).

The Fifth Circuit has emphasized that expert testimony must be grounded in "the methods and procedures of science" rather than "subjective belief or unsupported speculation." Moore v. Ashland Chem., Inc., 151 F.3d 269, 275 (5th Cir. 1998). The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. See id. at 276. However, the proponent need not prove that the expert's opinion is correct, but only that it is reliable. See id.

Ultimately, the Court must determine whether the expert is qualified, whether the methodology is reliable, and whether the testimony will assist the trier of fact. If these conditions are not met, exclusion is warranted, but "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000).

## II. Analysis

### a. Future Medical Costs

Coleman first seeks exclusion of Dr. Brown's opinions regarding future medical costs. In their opposition, Defendants expressly stipulate that Dr. Brown will not testify or offer opinions regarding Coleman's future medical costs and represent that they have retained a separate expert to address those issues. See Record Document 118 at 2. Accordingly, the Motion is **GRANTED** as to Dr. Brown's future medical cost opinions, and Dr. Brown shall not offer testimony concerning future medical costs at trial.

### b. Coleman's Neurological Condition and the October 2023 EMG

Coleman challenges Dr. Brown's opinions regarding Coleman's neurological condition, arguing that Dr. Brown failed to adequately account for an October 2023 EMG report showing radial neuropathy and performed an insufficient neurological examination. See Record Document 104-1 at 4. Coleman further argues that Dr. Brown could not recall during his deposition whether he reviewed the EMG before preparing his report. See id.

The Court finds that these criticisms go to the weight of Dr. Brown's testimony rather than its admissibility. Dr. Brown acknowledged the EMG findings during his deposition and provided an explanation for why the study did not alter his clinical conclusions during his January 2026 examination. See Record Document 104-4 at 17–20. Coleman has not demonstrated that Dr. Brown employed an unreliable methodology

such that exclusion is warranted under Rule 702. Any alleged shortcomings in Dr. Brown's review of the medical records, interpretation of the EMG, or physical examination may be explored through cross-examination. Accordingly, the Motion is **DENIED** on this subject.

    c.  <u>Return to Work</u>

Coleman also seeks exclusion of Dr. Brown's opinion that Coleman is capable of returning to her pre-injury sedentary occupation to the extent that opinion relies upon his neurological findings. Because the Court finds that Coleman has not established a basis for excluding Dr. Brown's neurological opinions, the Court likewise declines to exclude his opinions regarding Coleman's functional capacity and work restrictions. Any alleged weaknesses in the underlying examination may be presented to the jury. Accordingly, the Motion is **DENIED** on this topic.

    d.  <u>Future Treatment</u>

Coleman next seeks to exclude Dr. Brown's opinions regarding future surgical treatment and the appropriate surgical approach to Coleman's anticipated hip arthroplasty. Coleman emphasizes that Dr. Brown no longer performs orthopedic surgery and testified regarding certain physical limitations.

The Court finds no basis for exclusion of this testimony. The record reflects that Dr. Brown is a board-certified orthopedic surgeon who practiced orthopedic surgery for decades, performed the type of procedures at issue during his career, remains licensed, and continues to practice medicine and perform independent medical examinations. <u>See</u> Record Document 104-3. Any reduction in his surgical practice or disagreement regarding the appropriate surgical approach affects the weight of his testimony rather than its admissibility. Accordingly, the Motion is **DENIED** on this ground.

## CONCLUSION

Based on the reasons explained above, Coleman's <u>Daubert</u> Motion (Record Document 104) is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** to the extent that Dr. Brown shall not offer testimony regarding Coleman's future medical costs. The Motion is **DENIED** in all other respects.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of July, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT